# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

CIVIL ACTION NO. 11-125-DLB

THOMAS H. DIERIG                                                      PLAINTIFF

vs.                        <u>MEMORANDUM OPINION & ORDER</u>

LEES LEISURE INDUS., LTD., ET AL.                              DEFENDANTS

* * * * * * * * *

Plaintiff Thomas H. Dierig ("Dierig") commenced this civil action against Defendants Lees Leisure Industries, Limited ("Lees Leisure"),[1] Lite Tent Camper, LLC ("Lite Tent"), and Jimmie G. Dawkins ("Dawkins") alleging product liability claims, including negligence and breach of warranty, for the malfunction of a latch on a pull tent trailer manufactured by Lees Leisure and sold to Plaintiff by Dawkins of Lite Tent, a distributor of Lees Leisure products.

This matter is currently before the Court on Defendants' Joint Motion to Dismiss (Doc. # 11). The motion has been fully briefed by the parties (Docs. # 12, 18). Defendants have additionally filed a Motion to Strike Exhibit 16 to Plaintiff's Response (Doc. # 17; *see* Doc. # 12-16). This motion has likewise been fully briefed (Docs. # 19, 20). On November 17, the Court conducted oral argument on these motions. Attorney Edwin Tranter appeared on behalf of Plaintiff, and Attorneys David Kramer and David Dirr appeared on

---

[1] Lees Leisure also does business under the titles Lees-ure Lite Products, Ltd. and Lees-ure Lite. (Doc. # 1 at 2).

1

behalf of the Defendants. These matters are now ripe for review. For the reasons set forth below, Defendants' Joint Motion to Dismiss is **granted** in part and **denied** in part, and Defendants' Motion to Strike is **denied as moot**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thomas H. Dierig, a citizen of Kentucky, is a motorcyclist and camper. In September 2009 Plaintiff became interested in purchasing a tent trailer, specifically one manufactured by Canadian corporation Lees Leisure, to be pulled behind his motorcycle. (Doc. # 12 at 1). Plaintiff developed this interest through conversation with a fellow member of the Gold Wing Road Riders ("Gold Wing") who owned a Lees Leisure pull tent trailer, Plaintiff's review of Lees Leisure advertisements in Wing World magazine, and his review of Lees Leisure brochures. (*Id.* at 1-2). The Lees Leisure website and brochure directed Plaintiff to contact Jimmie Dawkins of Lite Tent in South Carolina, its nearest distributor, for more information. Lite Tent was also touted as the exclusive authorized distributor in the Southeast and the only factory authorized distributor in this region, according to its website. (*Id.* at 4). Upon contacting Dawkins at the direction of Lees Leisure's website and brochure, Dawkins advised Plaintiff that he had a trailer of the price range and description requested, and agreed to place the item on hold. (*Id.* at 5).

On September 25, 2009, Plaintiff met with Dawkins at the Gold Wing bike rally in North Carolina. (Doc. # 12 at 5). Finding the unit suitable, Plaintiff purchased the pull tent trailer and received a Bill of Sale and a Certificate of Origin from Dawkins. Both of these documents listed Plaintiff's name and address in Highland Heights, Kentucky, and the Certificate also bore the signature of a representative of Lees Leisure. (*Id.* at 5-6). The

trailer in question was manufactured in Canada by Lees Leisure and sold to a retailer in Florida in 2005. (Doc. # 11-1 at 3). After acquiring the trailer from the Florida retailer, and prior to this sale, Lite Tent had used this particular trailer as a demonstration model. (*Id.*).

In July 2010, Plaintiff drove his motorcycle with the attached tent trailer from his home in Kentucky to British Columbia, Canada. During this trip, the pin used by Plaintiff to secure the latch holding the trailer lid in place became unfastened. Consequently, the lid of the trailer opened while Plaintiff was traveling in British Columbia. The effect of the wind blowing against the open tent trailer allegedly caused the motorcycle to be "thrown about the road, and caused the Plaintiff to lose control of his motorcycle and be thrown off of his cycle into a ditch, resulting in Plaintiff being seriously injured." (Doc. # 1 at 6). Plaintiff states that this latch system constituted a defective and unreasonably dangerous condition because it lacked the proper latch pin, and the manufacturer and distributor provided insufficient instructions as to the type of pin necessary to alleviate this dangerous condition. (*Id.*). Plaintiff filed suit alleging three separate counts of product liability, including negligence in manufacturing and selling a defective product, and failure to warn consumers of the danger, as well as breach of express and implied warranties. (*Id.* at 5-9). Plaintiff seeks "compensatory damages in an amount of $500,000; for his cost herein expended, for interest on the judgment until paid in full, for trial by jury, and for any and all further relief to which [he] may be entitled." (*Id.* at 9).

**Contacts with Kentucky**

Defendant Lees Leisure, the manufacturer of the trailer, acknowledges that they did place advertisements in Wing World, a nationally distributed magazine, which Plaintiff

received at his home in Kentucky.  (Docs. # 11-1 at 7; 12 at 2).  Defendants further assert that Plaintiff initiated contact with Lite Tent and its agent, Dawkins, in South Carolina, eventually conducting the purchase of the product in North Carolina.  (Doc. # 11-1 at 7). Additionally, Defendants contend that "Lees Leisure has sold only one trailer to a Kentucky customer through its website," and that "Lite Tent has delivered only two trailers in the state."  (*Id.* at 10).  Defendants also note that they have no distributors, offices, employees or agents, property or bank accounts in the state of Kentucky.  (Doc. # 11-1 at 2, 13).

In addition to the conduct admitted by Defendants, Plaintiff includes a numbered list in his response.  (Doc. # 12 at 14).  Plaintiff first addresses the shortcomings of Defendants' allegations by noting that Defendants have sold more Lees Leisure products to residents of Kentucky than the three trailers alleged in the motion to dismiss, including camper and trailer accessories.  (*Id.* at 4–7).  Plaintiff additionally highlights the presence of a customer testimonial in a Lees Leisure products brochure, labeled as from a resident of Walton, Kentucky.  (*Id.* at 3).  This brochure also contained the names and contact information of Lite Tent and Dawkins.  (Doc. # 12-3 at 4).  Plaintiff further alleges that Dawkins, knowing Plaintiff to be a resident of Kentucky, "induced [him], in a telephone conversation, to have a business meeting with [Dawkins] to discuss why [Plaintiff] should buy a tent trailer."  (Doc. # 12 at 14).  Finally, Plaintiff emphasizes that prior to and including the time of purchase, Dawkins, and thereby Lite Tent, knew that Plaintiff was a resident of Kentucky and would be promptly returning to his home state with the purchased trailer.  As evidence of this, Plaintiff highlights the fact that he had to write his name and home address on the Bill of Sale and Certificate of Origin, both presented to him by Dawkins at the time of purchase.  (*Id.*).

## II.  ANALYSIS

### A.  Defendant's Joint Motion to Dismiss for Lack of Personal Jurisdiction Is DENIED as to Lite Tent and GRANTED as to Lees Leisure

#### 1.  Standard

In considering a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party asserting personal jurisdiction, always bears the burden of demonstrating that jurisdiction exists.  *See, e.g.*, *Serras v. First Tenn. Bank Nat'l Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  When the court chooses to rule without conducting an evidentiary hearing, a plaintiff may defeat such motion upon a prima facie showing of personal jurisdiction.  *CompuServe*, 89 F.3d at 1262 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).  To counter a well supported motion, the plaintiff may not rest on pleadings alone, "but must set forth, 'by affidavit or otherwise[,] . . . specific facts showing that the court has jurisdiction.'"  *Serras*, 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).  Without a hearing, the court "does not weigh the controverting assertions of the party seeking dismissal," but rather "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff."  *CompuServe*, 89 F.3d at 1262.  The Sixth Circuit has articulated this rule "to prevent nonresident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."  *Theunissen*, 935 F.2d at 1459.  Therefore, "[d]ismissal . . . is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima face case for jurisdiction."  *Id.*

In determining whether a defendant is subject to personal jurisdiction, the Court must employ a two step process. The first step is to determine whether personal jurisdiction over the defendant would be in accordance with the requirements of Kentucky's long-arm statute.[2] If jurisdiction may be properly extended under the long-arm statute, the Court proceeds to the second step. At step two of analysis, the Court examines whether the exercise of personal jurisdiction would offend the due process rights granted under the Constitution.

## 2. Agency

Plaintiff attempts to employ the tenets of agency law to support his demand that "all contacts between Mr. Dawkins and Mr. Dierig be considered as contacts between Lees Leisure and Mr. Dierig for purposes of Federal Due Process specific jurisdiction analysis." (Doc. # 12 at 17). Asserting the existence of "apparent authority," Plaintiff purports to have relied on this assumed agency relationship when conducting business with Lite Tent and Dawkins. Kentucky has adopted the test articulated in the Restatement (Third) of Agency that apparent authority is created when "a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03 (2006); *see Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985). This definition can be further delineated to

---

[2] Until recently, courts have interpreted the Kentucky long-arm statute to be entirely subsumed by the federal due process analysis for the exercise of personal jurisdiction over nonresidents. This notion that personal jurisdiction in Kentucky reaches to the outer limits as defined by federal due process was overturned in *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). The court in *Caesars* restored the independent significance of the long-arm statute, clarifying "that the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process." *Caesars*, 336 S.W.3d at 57; *see Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011). The court further held that "[t]o the extent *Wilson*, *Cummings*, and like cases hold otherwise, they are overruled." *Caesars*, 336 S.W.3d at 57.

distinguish two elements: (1) manifestations must have been made by the principal (here, Lees Leisure); and (2) the plaintiff must have reasonably believed that the agent (here, Lite Tent) had authority to act on the principal's behalf as a result of the principal's representations.

Plaintiff asserts that he relied on manifestations made by Lees Leisure in believing that Lite Tent was an agent of Lees Leisure. He maintains that Lees Leisure's magazine advertisements "created apparent authority for Lite Tent and Mr. Dawkins to act and sell units on behalf of Lees Leisure." (Doc. # 12 at 17). As evidence of this, Plaintiff states that Lees Leisure provided Plaintiff with contact information to the nearest distributor, in this case Lite Tent and Dawkins. (*Id.*). Plaintiff also contends that the language present on the Certificate of Origin establishes that Lite Tent was selling products on behalf of Lees Leisure as its agent, acting with at least apparent authority. This document, pre-signed by a representative of Lees Leisure, certifies that the trailer "is the property of the said company, firm or corporation and is transferred on the below date to the following party," after which Plaintiff wrote his name and address.

The record does not establish the presence of an actual agency relationship between the manufacturer, Lees Leisure, and the distributor, Lite Tent. Representatives of both companies state in their affidavits that no such agency relationship exists between Lees Leisure and Lite Tent. (Docs. # 11-2 at 3; 11-3 at 3). Moreover, the second affidavit of Richard Lees, Director of Lees Leisure, further defines the business relationship between these two defendants. He states that "Lees Leisure has no control over its distributors . . . [and] does not interfere in the distributors' business operations or instruct them on how to conduct business." (Doc. # 18-1 at 2). Lees Leisure "distributors" are

defined as those "who have met criteria allowing them to purchase trailers from Lees Leisure at wholesale prices." (*Id.*). The only criteria necessary to earn the right of distributor status "is a minimum initial unit purchase of six tent trailers (at one point it was 10 tent trailers) and minimum unit purchases of two every year thereafter." (*Id.*). Lees also states that a form "certificate of origin" accompanies each trailer, bearing its individual product number, and is delivered with the trailer to the distributor. (*Id.* at 3). It is then the responsibility of the distributor to insert the name and address of the customer, and "Lees Leisure normally is not aware as to when or to whom the distributor sells the tent trailer." (*Id.*). Furthermore, both parties acknowledge that Lite Tent did not receive the trailer directly from Lees Leisure, but rather from another retailer in Edgewater, Florida. (*See* Doc. # 11-1 at 3). Therefore, the record does not provide a sufficient factual basis to find that an actual agency relationship existed between Lees Leisure and Lite Tent.

However, Plaintiff alleges at least the existence of "apparent authority." Plaintiff's argument lacks merit because his alleged reliance on Lees Leisure's meager outward manifestations was not reasonable. Apparent authority under Kentucky law has been found to exist in one instance where the defendant informed the plaintiff that his dealings would be subsequently handled by the distributor, and upon protests of the plaintiff, assured him "'that working with [the distributor] is the same as working directly with [the defendant].'" *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 730 F. Supp. 2d 683, 692 (W.D. Ky. 2010). Upon a prima facie finding of apparent authority, the actions of the agent were attributed to the principal for the purposes of a personal jurisdiction analysis. *Id.* The facts of the case currently before the Court, however, do not rise to the level of

those in *Morris*.

The only communications made by Lees Leisure that Plaintiff draws the Court's attention to are providing Lite Tent and Dawkins' contact information "in a magazine circulated in Kentucky" and presenting him with a Certificate of Origin. (Doc. # 12 at 5, 17). Plaintiff argues that the advertisement "created apparent authority for Lite Tent and Mr. Dawkins to act and sell units on behalf of Lees Leisure." (*Id.*). Naming Lite Tent as one of its distributors and making contact information available does not, without more, create a reasonable assumption of an agency relationship. "Under Kentucky law, an agency relationship is not established merely by showing that the immediate seller is a dealer of the manufacturer's product." *Scott v. Stran Bldgs.*, No. 90-5039, 1991 WL 3377, at *5 (6th Cir. Jan. 16, 1991) (unpublished decision) (citing *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764 (Ky. Ct. App. 1985)); *see also Hendon v. Magic Circle Corp.*, No. 5:07-cv-00106-R, 2009 WL 3241593, at *4 (W.D. Ky. Oct. 2, 2009).

Furthermore, the Certificate of Origin also fails to provide support for Plaintiff's argument. This document merely assures the consumer that the product they are purchasing is indeed an original of the make or model promised to them by the seller. This same type of single-page product certification, bearing the model or identification number of the product and the name of the manufacturer, accompanies nearly every commercial transaction in which a higher end product is sold. Therefore, this Certificate is not a sufficient manifestation by Lees Leisure to reasonably suggest to Plaintiff that Lite Tent has the authority to act on behalf of Lees Leisure as its agent.

Plaintiff does not present any evidence that Lees Leisure made any further manifestations to imply that Lite Tent was given authority to act on its behalf. Without some further communication or action by Lees Leisure, the Court cannot find that a prima face showing was made that Lite Tent was acting under even apparent authority. Therefore, the personal jurisdiction analysis in this case must proceed without the application of the laws of agency.

### 3. Step 1: Kentucky Long-Arm Statute

There are nine instances enumerated in Kentucky's long-arm statute which allow Kentucky courts to extend personal jurisdiction over a nonresident. Defendants argue that the Kentucky long-arm statute does not permit this Court to exercise personal jurisdiction over Defendants "because the alleged negligence and injury that gave rise to this claim all occurred outside the Commonwealth." (Doc. # 11-1 at 4). Plaintiff maintains that the exercise of personal jurisdiction over the nonresident Defendants is proper pursuant to three separate provisions within K.R.S. § 454.210(2)(a).

### a. Defendant Lite Tent

Plaintiff correctly asserts that section (2)(a)(2) is applicable to the conduct of the nonresident Defendant Lite Tent. This provision states that "[a] Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [c]ontracting to supply services or goods in this Commonwealth." K.R.S. § 454.210(2)(a)(2). Lite Tent contests the application of this provision, arguing that it did not "contract to supply" the trailer in Kentucky, but rather made arrangements to complete the sale with Plaintiff in North Carolina. (Doc. # 11-1 at 6). Lite Tent further

notes that it "did not contract to provide any services to Plaintiff after he took the trailer back to Kentucky." (*Id.* at 6-7). Although these statements by Defendants accurately reflect the undisputed conduct of the parties, they are insufficient to preclude the applicability of this section.[3]

In *Hinners v. Robey*, the Kentucky Supreme Court addressed this issue on similar facts. The Court stated that "[a] plain reading of the statutory language produces the interpretation that the contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." 336 S.W.3d 891, 896 (Ky. 2011). That is the situation here. The parties in *Hinners* entered into a contract to purchase a vehicle pursuant to an internet auction. The defendant in that case, a resident of Missouri, had posted the vehicle for sale, and the plaintiff, a Kentucky resident, had placed the winning bid. The court acknowledged that the deal was finalized "beyond Kentucky's border," but added that "it was anticipated by the parties from the outset that the vehicle would be transported to and used in Kentucky." *Id.* The court instructs that these facts "[c]learly" demonstrate that the defendant's conduct fell within the purview of this particular provision of the statute.[4]

---

[3] At oral argument, Defendants also contested the existence of a contract between Plaintiff and Lite Tent for the good supplied. However, at this stage of review, the Court "does not weigh the controverting assertions of the party seeking dismissal," but rather "must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe*, 89 F.3d at 1262. Plaintiff asserted that at least an oral contract was created through the communications between Plaintiff and Dawkins.

[4] The court found that this single contact was sufficient to authorize personal jurisdiction under the Kentucky long-arm statute, though it ultimately found that the exercise of jurisdiction over the nonresident would offend the standards of federal due process as it did not satisfy the first and third prongs of the due process analysis. *Hinners*, 336 S.W.3d at 899-902.

The facts here are similar. Plaintiff contacted Dawkins, representative of Lite Tent, pursuant to the advertisements of Lite Tent and Lees Leisure. The parties determined that Lite Tent had a product that Plaintiff was interested in purchasing. Because Plaintiff resided in Kentucky and Lite Tent in South Carolina, the parties agreed to finalize their purchase in a location relatively convenient to both parties. Plaintiff met Dawkins in North Carolina during Plaintiff's stay there for a Gold Wing bike rally, and there they finalized the sale of the pull tent trailer. It is clear from the communications between Plaintiff and Dawkins, and from the address Plaintiff listed on the Bill of Sale and Certificate of Origin documents, that Defendant Lite Tent knew the product would be transported back to and used in Plaintiff's resident state of Kentucky. Therefore, it is evident from "[a] plain reading of the statutory language" that KRS § 454.210(2)(a)(2) is applicable because Lite Tent "contract[ed] to supply . . . goods in this Commonwealth." *Hinners*, 336 S.W.3d at 896. The exercise of personal jurisdiction over Lite Tent is therefore authorized by this statute if Plaintiff's claim is found to have arisen from this conduct.

Courts have further articulated that whether the exercise of personal jurisdiction is proper pursuant to the Kentucky long-arm statute involves a two-step inquiry. The additional limitation is found in the opening language of section (2)(a) of the statute. After making the determination that one of the specific provisions is applicable, the Court must then find that the cause of action is one "arising from" the conduct identified in the particular provision. K.R.S. § 454.210(2)(a). In *Caesars Riverboat Casino*, the court emphasized this as a separate, mandatory requirement. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). The court rejected the use of a "but for" analysis and

further instructs that the "arise from" requirement is satisfied "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Id.* at 58-59; *see also Hinners*, 336 S.W.3d at 896-97.

Here Plaintiff's complaint alleges product liability claims, maintaining that these claims arise from the sale of the product in question. Plaintiff distinguishes the instant facts from those in *Caesars*, which held that "a slip-and-fall accident in an Indiana casino could not reasonably be construed as 'arising from' the casino's 'transacting business' in Kentucky by way of advertising and promotional campaigns." *Hinners* 336 S.W.3d at 896 (citing *Caesars*, 336 S.W.3d at 58). Plaintiff argues that unlike the tenuous connection in *Caesars*, the subject goods of the contract for sale encompassed in section (2)(a)(2) embody the "defective and negligent condition" that gave rise to Plaintiff's injury and the basis for his claim. (Doc. # 12 at 9).

Given the "unlimited factual possibilities," the Court "will ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction." *Caesars*, 336 S.W.3d at 59. It is self-evident that a claim for injuries resulting from a "defective and unreasonably dangerous" product, as well as breach of express and implied warranties made at the time of the sale (Doc. # 1), bears a reasonable and direct nexus to the "[c]ontract[] to supply . . . goods" that caused the injury. K.R.S. § 454.210(2)(a)(2).

For the reasons stated herein, the exercise of personal jurisdiction over Lite Tent in this case is permissible under K.R.S. § 454.210(2)(a)(2). It is therefore unnecessary to address Plaintiff's arguments for the application of the remaining two provisions of K.R.S.

§ 454.210 on which he relied in his Response.[5]  Whether the Court may ultimately exercise personal jurisdiction over Defendant Lite Tent now depends upon the result of the federal due process analysis.

## b.    Defendant Lees Leisure

Defendant Lees Leisure is not subject to personal jurisdiction under the Kentucky long-arm statute from any direct conduct or activities.   Though jurisdiction may be authorized by the statute over a principal premised on the conduct of its agent, the Court has already reached the determination that an agency relationship does not exist on these facts.  *See* K.R.S. § 454.210(2)(a) (allowing a court to exercise personal jurisdiction under nine specified circumstances in which the nonresident "acts directly *or by an agent*") (emphasis added).  One of the long-arm provisions applies to Defendant Lees Leisure's conduct, however Plaintiff's cause of action does not arise from that conduct.  Therefore, the exercise of personal jurisdiction over this defendant does not comport with Kentucky's long-arm statute.

Plaintiff asserts that three of the statutory long-arm provisions apply to the Defendants in this case.  The first circumstance that Plaintiff alleges is applicable is section (2)(a)(1), permitting the exercise of jurisdiction pursuant to the nonresident's "[t]ransacting any business in this Commonwealth."  KRS § 454.210(2)(a)(1).  The facts demonstrate that this section applies to the conduct of Lees Leisure.

---

[5]  Plaintiff also argues that the conduct or activities listed in sections (2)(a)(1) and (2)(a)(5) are applicable to the nonresident Defendants and permit the exercise of personal jurisdiction over them.  (Doc. # 12 at 18, 20).

Lees Leisure engaged in advertising and marketing that reaches into Kentucky. Lees Leisure placed advertisements in a national magazine, distributed brochures and maintained a website with photos and descriptions of their products. The website also displays a variety of testimonials, including that of a resident of Walton, Kentucky, arguably demonstrating that these advertisements are at least in part directed at Kentucky residents. (Doc. # 12 at 3). Moreover, Lees Leisure representative, Richard Lees, admitted that Lees Leisure delivered at least one trailer to Kentucky after a Kentucky resident purchased it through their commercial website. (Doc. # 12-2 at 3).

Although Lees Leisure's conduct conforms to section (2)(a)(1), Plaintiff's claim cannot be said to have "aris[en] from" that conduct. The application of a "but for" test was rejected in *Caesars*, so any argument by Plaintiff that he would not have purchased the trailer 'but for' Plaintiff's advertisements and prior sales is ineffective. *See Caesars*, 336 S.W.3d at 58. In *Caesars*, the defendant was also found to have "transact[ed] business in this Commonwealth," however the plaintiff's claim arose from the defendant's failure to maintain safe premises in Indiana and failing to warn of that danger. *Caesars*, 336 S.W.3d at 59. Here, the manufacture and sale of an allegedly defective product and the advertising and marketing of that product conducted by Lees Leisure do share some relation. Although the connection between the statutory predicate to extend long-arm jurisdiction over Lees Leisure and Plaintiff's cause of action is not as attenuated as in the facts of *Caesars*, the connection here remains too tenuous.

It cannot be said that there is a "reasonable and direct nexus" between Lees Leisure's advertising and prior sales to Kentucky residents and Plaintiff's claims. In his

complaint, Plaintiff alludes to the creation of an express warranty through the representations made by Defendants in their advertising and marketing materials. (Doc. # 1 at 7). Plaintiff clarified in his affidavit, however, that "the basis of [his] claim involves the defective tent trailer that [he] pulled, used, and stored in Kentucky and [his] claim is *not based on ads*, although [he is] aware" of Defendants' extensive advertising directed at Kentucky residents. (Doc. # 12-1 at 3) (emphasis added).

Plaintiff next proposes the application of section (2)(a)(2). Although this section was found to be applicable to the conduct of Defendant Lite Tent, it is not applicable to Defendant Lees Leisure. Lees Leisure was not a party to the transaction in which Plaintiff purchased the pull tent trailer, and had no independent knowledge of the identity or residence of Plaintiff at the time of the transaction, and therefore could not have anticipated that this particular product was certain to be transported and used within Kentucky borders. Because the Court found no agency relationship between manufacturer and distributor, Lees Leisure cannot be found to have had such knowledge. Therefore, this section is inapplicable.

Finally, Plaintiff seeks to apply section (2)(a)(5) to establish personal jurisdiction. As with the prior analysis, having found that an agency relationship does not exist, this section does not apply for multiple reasons. This section is inapplicable on the first condition of the provision that the conduct "[c]aus[ed] injury in this Commonwealth." K.R.S. § 454.210(2)(a)(5). Plaintiff asserts that the "brunt" of his injury occurred in this Commonwealth because after the crash that occurred in Canada, Plaintiff "returned to Kentucky for surgery." (Doc. # 12 at 20). This reasoning is flawed.

Plaintiff bases this argument on the United States Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 789 (1984). The Court stated that because "the brunt of the harm" was suffered there, it was appropriate to subject the Florida residents to jurisdiction in California "based on the 'effects' of their Florida conduct in California." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980); RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 37). The facts of *Calder*, however, are notably distinct from the facts in this case. In *Calder*, a libel case, Florida residents wrote and edited an article in Florida, however the article "concerned the California activities of a California resident." *Id.* It was "drawn from California sources" and the harm occurring in California was the plaintiff's "emotional distress and the injury to her professional reputation." *Id.* Under a federal due process analysis, the Court found that because "their intentional, and allegedly tortious, actions were expressly aimed at California . . . petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." *Id.* at 789-90 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

The location of the plaintiff's suffering in *Calder* was in no way a result of post-injury choices. To subject nonresident parties to personal jurisdiction based on the whim or unique preferences of a plaintiff would be to undermine the fundamental purpose of a personal jurisdiction requirement. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (finding that "the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit'")

(quoting *World-Wide Volkswagen*, 444 U.S. at 297). Therefore, the Court will not impose jurisdiction over a nonresident party solely on the basis of where the plaintiff chose to seek medical care.

Regardless of whether Lees Leisure may be found to have such minimum contacts with the forum state as to not offend the standards of federal due process, it must also be subject to jurisdiction under the Kentucky long-arm statute. As recently clarified by *Caesars* and *Hinners* as a two-step process, the Court is not authorized to exercise personal jurisdiction over a nonresident based on the satisfaction of the federal due process analysis alone. Therefore, because Lees Leisure fails to meet any provision of K.R.S. § 454.210(2)(a), it is not subject to personal jurisdiction by this Court.[6] Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction as to Defendant Lees Leisure is **granted**.

### c.    Defendant Dawkins

The Court need not address the issue of personal jurisdiction as to Defendant Dawkins, because his actions have already been discussed as attributed to Lite Tent, as at all relevant times he was acting as Lite Tent's agent. Additionally, Plaintiff has failed to

---

[6] Because the Court may not exercise personal jurisdiction over Defendant Lees Leisure for the reasons stated herein, any discussion of the efficacy of service upon this party is thus rendered moot. Accordingly, Defendants' Motion to Dismiss claims against Defendant Lees Leisure for failure to properly serve and their Motion to Strike Exhibit 16, as it relates to service of Lees Leisure, are both denied as moot.

Additionally, the cases Defendants relied upon at oral argument regarding personal jurisdiction pertain to the application of the due process analysis to manufacturers. *See, e.g.*, *J. McIntyre Mach. v. Nicastro*, 131 S. Ct. 2780 (2011); *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790 (6th Cir. 1996); *Crouch v. Honeywell Int'l*, Inc., 682 F. Supp. 2d 788 (W.D. Ky. 2010); Majestic *125, LLC v. Sealift, Inc.*, No. 06-cv-104, 2006 WL 2039984 (W.D. Mich. July 19, 2006). Because the Court has found that Plaintiff cannot satisfy the Kentucky long-arm statute with respect to Lees Leisure, the Court need not perform the due process analysis as it pertains to Lees Leisure and therefore these cases will not be discussed herein. Furthermore, Plaintiff's reliance on *J. McIntyre Machinery* for the proposition that it is fundamentally unfair "that a manufacturer selling its products across the USA may evade jurisdiction in any and all States" is likewise misplaced for the reasons stated above, among others. *J. McIntyre*, 131 S. Ct. at 2801 (Ginsburg, J., dissenting).

18

state a claim on which relief can be granted for the reasons stated in the analysis *infra* at VIII.C.2.

### 4. Federal Due Process

"The Fourteenth Amendment's Due Process Clause sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A., et al. v. Brown, et al.*, 131 S. Ct. 2846, 2848 (2011). In resolving the question of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King*, 471 U.S. at 474 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two forms of personal jurisdiction. General jurisdiction "depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Specific jurisdiction, on the other hand, "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 nn.8-10 (1984)).

Plaintiff only argues for the application of specific personal jurisdiction. (Doc. # 12 at 21). In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit implemented a three prong test to determine the "outermost limits" of personal jurisdiction based upon a defendant's single contact with the forum state. 401 F.2d 374, 381 (6th Cir. 1968). These criteria are stated as follows:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.*

This analysis will only be applied to Defendant Lite Tent, as it is the only defendant over whom the exercise of personal jurisdiction by this Court satisfies the Kentucky long-arm statute.

> **a. The Defendant Must Have "Purposefully Avail[ed]" Himself of the Privilege of Acting or Causing Consequences in the Forum State**

The first prong of the *Mohasco* test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence therein. The Supreme Court has recognized that the existence of a single contract with a citizen of the forum state does not by itself confer personal jurisdiction over a nonresident defendant. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 795 (6th Cir. 1996) (citing *Burger King*, 471 U.S. at 478). "Rather, 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 479). In considering whether Lite Tent purposefully availed itself of the privilege of acting or causing a consequence in Kentucky, factors including the sale between the parties, as well as the knowledge of the parties and negotiations prior to the sale, and Lite Tent's contacts with Kentucky that induced the sale, must be examined.

Defendants liken these facts to those in *Hinners*, where the court found that personal jurisdiction did not comport with the federal due process standards because the fact "[t]hat the buyer's state is Kentucky is a purely fortuitous consequence, not a purposeful choice of [the seller]." *Hinners*, 336 S.W.3d at 900. In the court's analysis, they highlight the facts that the seller "did not limit the auction to bidders from Kentucky or target his advertisement to Kentucky residents, and in fact could not know the resident state of the successful bidder until the auction was complete." *Id.* at 899. These facts are easily distinguished as the interaction between Plaintiff and Lite Tent was not merely a "fortuitous consequence." *Id.*

Although Plaintiff concedes that he first contacted Lite Tent, this fact is inconsequential. *See Mohasco*, 401 F.2d at 382 (citing *Shealy v. Challenger Mfg. Co.*, 304 F.2d 102 (4th Cir. 1962) (finding that the plaintiff's solicitation to enter into an agreement was immaterial as defendant made the choice to deal with plaintiff and the court "cannot diminish the purposefulness of [defendant]'s choice")). The initial phone call by Plaintiff was made in response to advertisements directly targeted to consumers, including Kentucky residents. Lite Tent Camper, LLC and Jimmie Dawkins are specifically identified, with extensive contact information, on the Lees Leisure products brochure. (Doc. # 12-3 at 4). This brochure contains customer testimonials, including one attributed to a resident of Walton, Kentucky. (*Id.*). Additionally, Lite Tent's own website promotes itself as the "Distributor for the Southeast" and declares "We are the Southeast exclusive stocking factory authorized distributor for the full line of compact camping trailers and accessories manufactured by Lees-ure Lite Trailers." (Doc. # 12 at 3; *see* Doc. # 12-6).

When other Kentucky residents have contacted Lite Tent, they have welcomed their business and even delivered the products into the state. According to the affidavit of Dawkins, only two trailers were delivered to Kentucky locations on behalf of Lite Tent, both in May 2009. (Doc. # 11-3). In his response, Plaintiff has identified a Kentucky recipient of a tent trailer purchased from Lite Tent and delivered in May 2009 who also received a Lees Leisure accessory delivered to his Ludlow, Kentucky home by Lite Tent in May 2010. Plaintiff has also identified a Kentucky resident who purchased a Lees Leisure camper from Dawkins on behalf of Lite Tent in July 2007, which was delivered to his Frankfort, Kentucky home. From Plaintiff's limited access to transactions in Lite Tent's sales history, he has already identified sales into Kentucky beyond those suggested by Lite Tent. "The proper test for personal jurisdiction is not based on a 'percentage of business' analysis ... but rather on whether the absolute amount of business . . . represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891-92 (6th Cir. 2002) (quoting *Burger King*, 471 U.S. at 475) (internal quotations omitted); *see also CompuServe*, 89 F.3d at 1265 (stating that "'[i]t is the quality of [the] contacts,' and not their number or status, that determines whether they amount to purposeful availment") (emphasis and internal quotations omitted) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)). Because Lite Tent has reached out to Kentucky through directed advertisements containing a resident's testimonial as well as their self-promotion as the exclusive distributor for the Southeast, their resulting Kentucky business transactions are neither random nor fortuitous.

Furthermore, Lite Tent was aware from the outset of negotiations that Plaintiff was a resident of Kentucky and intended to return home with the trailer. Lite Tent was also well aware prior to making the sale that the allegedly defective trailer would be primarily stored in and used on the roads in Kentucky. Plaintiff has alleged sufficient facts to demonstrate that Lite Tent's contract to supply goods in Kentucky was not a product of mere chance, but rather a direct result of Kentucky-targeted advertisements and knowingly making arrangements for products to be purchased by Kentucky residents.

### b. The Cause of Action must "Arise From" the Nonresident Defendants' Activities in the Forum State

The Court proceeds in the second prong to determine whether the cause of action arises from the activities of the nonresident in the forum state. Defendants' foreseeability argument based on the holding in *World-Wide Volkswagen* unwittingly pushes more in favor of Plaintiff's bringing suit in Kentucky rather than in the location of the accident, Canada. (Doc. # 18 at 12-13). Defendants focus their defense on the position of Lees Leisure and argue that "it is a violation of the Due Process Clause to subject manufacturers to personal jurisdiction all over the Unite [sic] States simply because their product travels through a state." (*Id.*). This constitutional precedent would be more applicable, and perhaps beneficial, to Defendants' position had Plaintiff brought suit against Lite Tent in Canada. Lite Tent knew when entering into discussions with Plaintiff that upon sale, the trailer, in its allegedly unsafe condition, would be brought back to Plaintiff's home state of Kentucky. Plaintiff's product liability cause of action here directly arises out of Lite Tent's activities with the forum state in targeting its advertisements and successfully inducing Plaintiff, a Kentucky resident, to purchase a product for use in his state of residence.

### c. There Must be Substantial Enough Connections to the Forum State Such That the Exercise of Jurisdiction Over Defendant Is Reasonable

The third and final prong in the federal due process analysis requires that the exercise of personal jurisdiction over a defendant be reasonable. The Sixth Circuit has held that where the first two prongs of the *Mohasco* test have been met, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268; *see Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 372 (6th Cir. 2006) (noting that a finding that the first two prongs of *Mohasco* have been met leads to a presumption that jurisdiction is proper, except in "unusual cases"). In determining whether jurisdiction is reasonable, the Court considers several factors including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)).

Defendants again compare these facts to those in *Hinners* to support their claim that Lite Tent did not have substantial enough contacts with Kentucky to make the exercise of personal jurisdiction reasonable.[7] (Doc. # 11-1 at 16). Defendants highlight the fact that "Lite Tent did not contract with [Plaintiff] to provide any services to him after he returned to Kentucky." (*Id.*). As explained above, these facts can be distinguished from *Hinners* in numerous ways. Lite Tent conducts an ongoing business of providing products for sale, has advertisements targeted at Kentucky residents, and was aware of the residency of

---

[7] Defendants alternatively suggest that "[i]t would be reasonable to subject Lees Leisure to personal jurisdiction in Canada" and that "[i]t would be reasonable to subject Lite Tent to personal jurisdiction in South Carolina." (Doc. # 18 at 14).

Plaintiff and the intended location of the allegedly defective trailer prior to making the sale.

Most significantly, this transaction was not the result of "a single listing" on a website but rather a part of Defendant Lite Tent's ongoing commercial business. *See Hinners*, 336 S.W.3d at 901 (citing *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) (distinguishing a single listing "from situations where a dealer maintains an ongoing commercial website")). Defendants contend that the website of Lite Tent is merely a passive post of information, not interactive like that in *Neogen*. (Doc. # 18 at 15); *see Neogen*, 282 F.3d at 890-91. Plaintiffs, however, do not rely on the website to provide the requisite contacts with Kentucky. Consequently, the interactive and commercial nature of Lite Tent's internet postings need not be analyzed here.

Plaintiff enumerates the Defendants' contacts with the forum state on which he relies:

> 1) direct sales of products to Kentucky residents, 2) advertisements placed in a magazine circulated in Kentucky, 3) an advertisement that specifically targeted Kentuckians in the form of a testimonial provided by a Kentucky resident . . . , 4) [Dawkins] inducing [Plaintiff] in a telephone conversation to have a business meeting with him, and 5) [Dawkins] contracting with [Plaintiff] to sell a trailer which is required to be registered in Kentucky and on which taxes would be paid in Kentucky.

(Doc. # 12 at 24). Defendants note that the direct sales to Kentucky residents are limited in number and that Lite Tent does not have "a regular supply of customers from Kentucky every year." (Doc. # 18 at 15). It is clear from Plaintiff's allegations that Lite Tent can and does expect business from Kentucky residents, and further that it welcomes and accommodates that business, even though the sales to Kentucky residents may not comprise a large portion of Lite Tent's annual revenue. Moreover, whether their directed

advertisements were successful to the degree intended in all southeastern states does not change the fact that Lite Tent reached out to Kentucky to solicit the business of its residents.

The parties have not addressed many of the factors that a court usually considers when making this determination. As noted above, some of these factors include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe*, 89 F.3d at 1268 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)). Lite Tent has not stated any particular reason why defending this case in Kentucky would be unduly burdensome. Furthermore, Defendants have not stated a single location that would be appropriate for Plaintiff to bring suit against both Defendant Lees Leisure and Defendant Lite Tent. Plaintiff's interest in obtaining relief is manifest. Likewise, Kentucky's interest in this case is straightforward. A Kentucky resident purchased an allegedly defective product that was at all times intended to be brought back into and used in Kentucky. This gives rise to an interest on a number of factors, such as highway safety concerns and potential expenses resulting from injury to persons or property from the use of an allegedly defective trailer on Kentucky roads.

Plaintiff has presented sufficient facts to establish a prima facie case that Lite Tent has substantial enough connections with Kentucky that the exercise of personal jurisdiction by this Court is reasonable. Therefore, because the facts viewed in a light most favorable to Plaintiff establish a prima facie showing that Lite Tent's conduct and activities with the forum state are in accordance with the Kentucky long-arm statute and are consistent with the requirements of federal due process, the exercise of personal jurisdiction over

Defendant Lite Tent is appropriate. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction as to Defendant Lite Tent is **denied**.

## B. Defendants' Motion to Dismiss for Failure to State A Claim as Against Dawkins Individually Is Granted

### 1. Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). However, the principle that a court must accept as true all allegations contained in the complaint does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action . . . ." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Furthermore, to survive a 12(b)(6) motion to dismiss, the complaint must "contain either direct or inferential allegations respecting all the material elements [of each claim] to sustain a recovery under some viable legal theory." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (internal quotations omitted) (quoting *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999)).

While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1999), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). A complaint will be insufficient if it tenders only "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 557. Accordingly, when a complaint merely contains legal conclusions, such are "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. While legal conclusions may provide the framework of the complaint, if unsupported by factual allegations dismissal is appropriate.

### 2.    Plaintiff Fails to State a Claim Against Dawkins Individually

In his complaint, Plaintiff describes Dawkins' relationship to this action as "a distributor, seller, servicer, and deliverer of tent trailers and tent trailer equipment accessories, and is a distributor of tent trailers for the Defendant, Lee-sure Lite."[8] (Doc. # 1 at 2). Plaintiff has made no allegations of any conduct by, nor interactions or communications with, Dawkins beyond those statements and actions made on behalf of Lite Tent as the seller of this trailer. Moreover, there is no evidence to indicate that Lite Tent was not a viable LLC, or that Dawkins ever acted on his own behalf in his dealings with Plaintiff. To the contrary, Dawkins' interactions with Plaintiff were all made pursuant to his position as owner and salesman of Lite Tent. Plaintiff states no facts to establish or support a finding that Dawkins is liable as an individual.

---

[8] Plaintiff refers to Defendant Lees Leisure as "Lees-ure Lite" throughout their written submissions. (*See* Docs. # 1, 12). Although this is a valid choice, the Court has adopted the use of the title Lees Leisure as employed by Defendants.

Defendants cite to the limited liability of individuals acting on behalf of a corporate entity, and argue that Plaintiff "fails to even make the preliminary naked assertions that Mr. Dawkins is individually liable to him." (Doc. # 11-1 at 19). Moreover, Plaintiff concedes in his response that if Lite Tent "was a legally viable limited liability company . . . and Jimmie Dawkins was authorized to do business as was done in this case for the LLC, and Jimmie Dawkins was not acting as a sole proprietor in the subject transaction, the Plaintiff has no interest in keeping Mr. Dawkins in the case as a Defendant."[9] (Doc. # 12 at 28). Plaintiff has not alleged any facts to suggest that Lite Tent was not a legally viable limited liability company at all relevant times, therefore all claims against Dawkins in his individual capacity must be dismissed and Defendants motion to dismiss as to Dawkins must be **granted**.

### C. Defendants' Motion to Strike is Irrelevant

Defendants filed a Motion to Strike Exhibit 16 to Plaintiff's Response Memorandum (Doc. # 17). Exhibit 16 consists of an e-mail from a lawyer at the Canadian Department of Justice as well as a list of declarations made by Canada as posted on the Hague Conference website. (Doc. # 12-16). *See* Canadian Declarations regarding the *Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, HAGUE CONFERENCE ON PRIVATE INT'L LAW,

---

[9] Under Kentucky law, "an agent or corporate officer is not immune from liability for his own intentional misconduct or for negligence based upon a breach of his own duty." *Young v. Vista Homes, Inc., et al.*, 243 S.W.3d 352, 363 (Ky. App. 2007) (finding that "[g]enerally, an agent is not liable for his own authorized acts . . . . [and that] [l]ikewise, an officer, director, or shareholder, when acting as an agent of the corporation, is also protected from personal liability when acting within his authority to bind the principal"). However, Plaintiff has not presented any claim that suggests Dawkins engaged in intentional misconduct or that his alleged negligence was based upon a breach of his own duty. Rather, Plaintiff merely maintains, as noted above, that if Lite Tent is indeed a viable LLC, he has no interest in continuing to pursue claims against Dawkins as an individual. (Doc. # 12 at 28).

http://www.hcch.net/index_en.php?act=status.comment&csid=392&disp=resdn.
Defendants assert that this exhibit should be stricken from the record because it contains "impermissible lay testimony" in an "untitled and unauthenticated email." (Doc. # 20 at 1). The purpose of this exhibit is to bolster Plaintiff's claim that service upon Defendant Lees Leisure, a Canadian corporation, via certified mail was proper. Lees Leisure argues that because service was improper, the Court does not have personal jurisdiction over it. This issue need not be decided.

This Court may not properly exercise personal jurisdiction over Defendant Lees Leisure, regardless of the issue of service of process, as discussed above. Accordingly, whether the exhibit is considered is a moot point. Therefore, the Motion to Strike Exhibit 16 is **denied as moot**.

### III. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants' Joint Motion to Dismiss (Doc. # 11) is hereby **DENIED** as to Defendant Lite Tent, and is hereby **GRANTED** as to Defendants Lees Leisure and Jimmie G. Dawkins;

(2) Defendants' Joint Motion to Strike Exhibit 16 (Doc. # 17) is hereby **DENIED as moot**; and

(3) Defendant Lite Tent shall file its Answer within twenty (20) days of the date of the entry of this Order.

This 23rd day of November, 2011.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Covington\2011\11-125 MOO granting & denying in part Ds' Joint MTD.wpd