## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

**CIVIL ACTION NO. 11-125-DLB-JGW**

**THOMAS H. DIERIG**                                                                    **PLAINTIFF**

**vs.**                          **MEMORANDUM OPINION & ORDER**

**LEES LEISURE INDUSTRIES, LTD.**                                         **DEFENDANT**

* * * * * * * * *

Plaintiff Thomas H. Dierig commenced this civil action against Defendants Lees Leisure Industries, Limited ("Lees Leisure"),[1] Lite Tent Camper, LLC ("Lite Tent"), and Jimmie G. Dawkins ("Dawkins")[2] alleging product liability claims of negligence and strict liability, as well as claims for breach of express and implied warranties, resulting from the malfunction of a latch on a pull tent trailer manufactured by Lees Leisure and sold to Plaintiff by Dawkins of Lite Tent, a distributor of Lees Leisure products.

This matter is currently before the Court upon Plaintiff's Motion to Alter or Amend or For Relief From Order pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), respectively (Doc. # 24).[3] The motion seeks reconsideration of the Court's November 23,

---

[1] Lees Leisure also does business under the titles Lees-ure Lite Products, Ltd. and Lees-ure Lite. (Doc. # 1 at 2).

[2] Upon agreement of the parties and Order of this Court (Doc. # 29), all claims by Plaintiff against Defendants Lite Tent and Jimmie Dawkins in this action have been dismissed with prejudice.

[3] The Court granted Plaintiff's Motion to Partially Withdraw his Motion to Alter or Amend (Docs. # 28, 31), such that the only issue remaining is as to the dismissal of Defendant Lees Leisure.

1

2011 Memorandum Opinion and Order (Doc. # 23) granting in part Defendants' Motion to

Dismiss (Doc. # 11), and dismissing Plaintiff's claims against Defendant Lees Leisure for

lack of personal jurisdiction.  This motion has been fully briefed (Docs. # 32, 33), and is now

ripe for review.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thomas H. Dierig, a citizen of Kentucky, is a motorcyclist and camper.  In

September 2009 Plaintiff became interested in purchasing a tent trailer, specifically one

manufactured by Canadian business entity Lees Leisure, to be pulled behind his

motorcycle.  (Doc. # 12 at 1).  Plaintiff developed this interest through conversation with a

fellow member of the Gold Wing Road Riders ("Gold Wing") who owned a Lees Leisure pull

tent trailer, Plaintiff's review of Lees Leisure advertisements in Wing World magazine, and

his review of Lees Leisure brochures.  (*Id.* at 1-2).  The Lees Leisure advertisements

directed Plaintiff to visit the Lees Leisure website, which in turn directed Plaintiff to contact

Jimmie Dawkins of Lite Tent in South Carolina, the nearest distributor.  Lite Tent was also

touted as the exclusive authorized distributor in the Southeast and the only factory

authorized distributor in this region, according to its own website.  (*Id.* at 3; *see* Doc. # 12-

6).  Upon contacting Dawkins at the direction of Lees Leisure's website and brochure,

Dawkins advised Plaintiff that he had a trailer of the price range and description requested,

and agreed to place the item on hold.  (*Id.* at 5).

On September 25, 2009, Plaintiff met with Dawkins at the Gold Wing bike rally in

North Carolina.  (Doc. # 12 at 5).  Finding the unit suitable, Plaintiff purchased the pull tent

trailer and received a Bill of Sale and a Certificate of Origin from Dawkins.  Both of these

documents listed Plaintiff's name and address in Highland Heights, Kentucky, and the

2

Certificate also bore the signature of a representative of Lees Leisure.  (*Id.* at 5-6).  The trailer in question was manufactured in Canada by Lees Leisure and sold to a retailer in Florida in 2005.  (Doc. # 11-1 at 3).  After acquiring the trailer from the Florida retailer, and prior to this sale, Lite Tent had used this particular trailer as a demonstration model.  (*Id.*).

In July 2010, Plaintiff drove his motorcycle with the attached tent trailer from his home in Kentucky to British Columbia, Canada.  During this trip, the pin used by Plaintiff to secure the latch holding the trailer lid in place became unfastened.  Consequently, the lid of the trailer opened while Plaintiff was traveling in British Columbia.  The effect of the wind blowing against the open tent trailer allegedly caused the motorcycle to be "thrown about the road, and causing the Plaintiff to lose control of his motorcycle and be thrown off of his cycle into a ditch, resulting in Plaintiff being seriously injured."  (Doc. # 1 at 6).  Plaintiff states that this latch system constituted a defective and unreasonably dangerous condition because it lacked the proper latch pin, and the manufacturer and distributor provided insufficient instructions as to the type of pin necessary to alleviate this dangerous condition.  (*Id.*).

Plaintiff filed his Complaint on June 23, 2011 alleging claims of product liability, including negligence and strict liability, as well as breach of express and implied warranties.  (Doc. # 1 at 5-9).  Defendants filed a Joint Motion to Dismiss for Lack of Jurisdiction and for Insufficient Service of Process as to Defendant Lees Leisure on September 6, 2011 (Doc. # 11).  The Motion was fully briefed (Docs. # 12, 18), and the Court conducted oral argument on November 17, 2011 (Doc. # 22).  Defendant Lees Leisure additionally filed a Motion to Strike Exhibit 16 to Plaintiff's Response (Doc. # 17), which was likewise fully briefed (Docs. # 19, 20).  The Court issued a Memorandum Opinion and Order (Doc. # 23)

3

granting Defendants' motion to dismiss as to Defendant Lees Leisure, which Plaintiff now seeks to alter or amend (Doc. # 24), and denying Defendant's Motion to Strike as moot. Plaintiff's Motion to Alter or Amend has been fully briefed (Docs. # 32, 33), and is now ripe for review.

## II.  ANALYSIS

### A.     Plaintiff's Motion for Reconsideration is Granted, and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is Denied

Plaintiff moves the Court to Alter or Amend its November 23, 2011 Order of dismissal pursuant to Federal Rule of Civil Procedure 59(e), or to vacate and set aside the Order pursuant to Rule 60(b).  (Doc. # 24).  Neither of these rules, however, provide an appropriate means to challenge a non-final order.  Rule 59(e), by its own terms, applies only to judgments.  Likewise, the terms of Rule 60(b) state that it applies only to "final" orders and judgments.  *See Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991); *Payne v. The Courier-Journal*, 193 F. App'x 397, 400 (6th Cir. 2006); *Browning v. Pennington*, No. 08-CV-99-KKC, 2011 WL 197859, at * 2 (E.D. Ky. Jan. 20, 2011).  The November 23, 2011 Order granted in part and denied in part Defendants' Join Motion to Dismiss and was not a final order.  It did not dismiss all of the Defendants, leaving Plaintiff with unresolved pending claims, and no separate judgment was entered.  *See Davey v. St. John Health*, 297 F. App'x 466, 469 (6th Cir. 2008) (citing Rule 54(b) for the proposition that when a plaintiff's case has remaining claims, an order of dismissal as to less than all defendants is not a final order).  At the time Plaintiff filed the instant motion, no final order or judgment had been entered in this case.

4

The Sixth Circuit has held, however, that "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory*, 922 F.2d at 1282 (citing *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47-48 (1943)).  Under this authority, "[a] district court may modify, or even rescind, such interlocutory orders." *Id.*  Although the Federal Rules of Civil Procedure do not explicitly address the reconsideration of non-final orders, the Sixth Circuit has indicated, in an unpublished opinion, that reconsideration of such orders is supported by Rule 54(b).  *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see Browning*, 2011 WL 197859, at *2.  Rule 54(b) states, in relevant part:

> [A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  Generally, justification for reconsidering an interlocutory order is found "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.  Plaintiff bases this motion for reconsideration on the need to correct clear errors of law and fact.

Plaintiff contends that the Court's November 23, 2011 Memorandum Opinion and Order (Doc. # 23) contained a clear error suitable for correction through a motion to reconsider.  Specifically, he argues that the Court erred by granting dismissal of Defendant Lees Leisure for lack of personal jurisdiction, asserting that the Court did not apply the correct legal standards in evaluating the existence of apparent agency for personal

5

jurisdiction purposes.  Plaintiff additionally argues that the Court mis-characterized the Certificate of Origin, which was provided to him upon the purchase of the trailer.  Upon reconsideration, Plaintiff's arguments provide sufficient evidence to meet the requirements at the motion to dismiss stage, and for the Court to therefore amend its prior Order.

### 1.    Motion to Dismiss Standard

In considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff, as the party asserting personal jurisdiction, always bears the burden of demonstrating that jurisdiction exists.  *See, e.g.*, *Serras v. First Tenn. Bank Nat'l Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  However, when the court evaluates a jurisdictional motion relying solely on written materials, "the plaintiff should be required only to make a prima facie case of jurisdiction . . . [and] the burden of the plaintiff is relatively slight."  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (finding that "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal").  Without conducting an evidentiary hearing, the court resolving a Rule 12(b)(2) motion "must consider the pleadings and affidavits in a light most favorable to the plaintiff," *CompuServe*, 89 F.3d at 1262, and "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214).  Therefore, "[d]ismissal . . . is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459).

6

### 2.   Apparent Agency

Plaintiff attempts to establish personal jurisdiction over Defendant Lees Leisure through the application of an actual, or at least an apparent, agency relationship.  Plaintiff asserts that for the purposes of personal jurisdiction, the acts of Lite Tent and Dawkins should be attributed to Defendant Lees Leisure, for whom they were acting under at least apparent authority when they sold the trailer to Plaintiff.  In his motion, Plaintiff argues that the Court did not apply the correct legal standard in its prior agency analysis.  Specifically, Plaintiff contends that the Court erroneously weighed the controverting assertions of Defendants and did not view the facts in a light most favorable to Plaintiff.  (Doc. # 24 at 3).  Plaintiff also argues that the Court improperly rejected the significance of the Certificate of Origin and incorrectly attributed its authorship.  (*Id*.).  Upon review, the Court agrees that the previous Order did not view the facts in a light most favorable to Plaintiff and improperly weighed the controverting assertions of the Defendants in contravention of the proper standard of review at the motion to dismiss stage.  Thus, the Court will reconsider the existence of an agency relationship for the purpose of establishing personal jurisdiction.

"An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934).  Although facts supporting an actual agency relationship have yet to be proven, Plaintiff has presented sufficient evidence to support a prima facie finding of at least apparent authority.

### a. Two-Step Test

In its prior Order, the Court misstated Kentucky's current law regarding apparent authority in its previous Order by citing the standard in the Third Restatement of Agency. Although some Kentucky appellate courts have employed the definition of apparent authority found in the Third Restatement, *see, e.g.*, *Laurel Creek Health Care Ctr. v. Bishop*, No. 2009-CA 001055-MR, 2010 WL 985299, at *2 (Ky. Ct. App. Mar. 19, 2010), the Kentucky Supreme Court has adopted the definition of apparent authority found in the Restatement (Second) of Agency § 267.  The definition states as follows:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

Restatement (Second) of Agency § 267; *see Roethke v. Sanger*, 68 S.W.3d 352, 363 (Ky. 2001); *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985).  This definition requires that: the principal (here, Lees Leisure) represented that the putative agent (here, Lite Tent and Dawkins) had the authority to act on its behalf; and that the third party (here, Plaintiff) justifiably relied on the principal's representations.

Defendant Lees Leisure suggests, by reference to *Curran v. Kwon*, No. 83 C 2061, 1985 WL 715, at *2 (N.D. Ill. Apr. 25, 1985), that Plaintiff has failed to provide any specific facts to satisfy the elements of apparent agency.  (Doc. # 18 at 2).  In Plaintiff's Response to Defendants' Motion to Dismiss, he asserts that "Lees Leisure advertised in a magazine circulated in Kentucky in a way that created apparent authority for Lite Tent and Mr. Dawkins to act and sell units on behalf of Lees Leisure."  (Doc. # 12 at 17).  He supports this argument with reference to specific statements on Lees Leisure's website and by

8

stating that "[t]he advertisement solicited business from Kentucky residents by encouraging Kentuckians to call and provided information that could be used to contact an operator that would provide direct contact information to the caller's nearest distributor; in this case, Mr. Dawkins and Lite Tent." (*Id.*).  Plaintiff further alleges to have relied upon this information in choosing to contact and conduct business with Lite Tent and Dawkins.  (*Id.*)

To meet the first element of apparent authority, Plaintiff must demonstrate that Defendant Lees Leisure made representations that Lite Tent and Dawkins had the authority to act on its behalf.  Plaintiff has attached to his written response copies of the advertisements which he alleges constitute such representations.  The Lees Leisure advertisement in Wing World magazine identifies their products, then encourages customers to "[c]all for nearest distributor."  (Doc. # 12-2 at 2).  A brochure of Lees Leisure likewise encourages the reader to "[c]all for a Distributor near you!"  (Doc. # 12-3 at 4). Additionally, the Lees Leisure website states that "*We* offer factory direct sales," then provides a list of "Factory Direct Distributors" and directs the reader to "find listed below a Distributor near you."  (Doc. # 12-5 at 1, 12) (emphasis added).  Listed, among others, is the name and contact information of Lite Tent and Dawkins.  (*Id.*).[4]

---

[4] Plaintiff has also attached as an exhibit the business card of Dawkins, labeling Lite Tent as a "Dealer for Lees-ure Lite Tent Trailers" and an exhibit featuring the content of Lite Tent's website (Docs. # 12-4, 12-6).  It is important to note, however, that these manifestations are not relevant to the apparent authority inquiry as "[a]pparent authority is based upon the representation or conduct of the principal, not of the agent." *Enzweiler v. Peoples Deposit Bank of Burlington, Ky,* 742 S.W.2d 569, 570 (Ky. Ct. App. 1987) (citing *Savannah Sugar Refinery v. RC Canada Dry*, 593 S.W.2d 880, 883 (Ky. Ct. App. 1980)).  No evidence has been presented demonstrating that the business card originated with Defendant Lees Leisure or, alternatively, that Lees Leisure ratified the statements on the business card and web-site.  Therefore, these additional representations will not be considered at this stage.

The instant question, therefore, is whether the representations made by Defendant Lees Leisure are of the kind which could give rise to apparent authority to sell units on its behalf. Defendant highlights the fact that "Lees Leisure and Plaintiff had no direct communications before this case." (Doc. # 32 at 3). However, direct contact between the principal and the third party asserting apparent authority is not required to satisfy this first element. *See, e.g., Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 58 (Ky. 2008) (Lambert, C.J., dissenting) ("Advertising and branding are the common means by which manifestations of apparent agency are made.") (citing *Billops v. Magness Constr. Co.*, 391 A.2d 196, 198 (Del. 1978) ("The manifestations may be made directly to the third party, or may be made to the community in general, for example, by way of advertising.")).

Comment (a) to section 267 of the Restatement further defines the substance of the required representations. It states that the rule of apparent agency generally applies where the plaintiff's dealing with the alleged agent is "in response to an invitation from the defendant to enter into such relations." Restatement (Second) of Agency § 267, cmt. a. The advertisements and web-site of Defendant Lees Leisure, encouraging viewers to purchase their products by contacting one of their listed distributors, could be viewed as such an invitation. Significantly, Defendant Lees Leisure's website emphasizes that "*We* offer *factory direct sales*" and subsequently lists their "*factory direct* distributors," including Lite Tent. (Doc. # 12-5 at 1, 12) (emphasis added). Viewing these facts in a light most favorable to Plaintiff and bearing in mind his "relatively slight" burden, *Am. Greetings*, 839 F.2d at 1169, the Court finds that Plaintiff has alleged sufficient facts to meet the first element of apparent authority at this stage.

10

The second element necessary to establish the existence of apparent authority is Plaintiff's justifiable reliance on the representations made by Defendant Lees Leisure. The Kentucky courts have held that the necessary "reliance need not be proven by express testimony but can be proven by circumstantial evidence absent evidence of actual knowledge to the contrary on the part of the person asserting ostensible agency." *Roethke*, 68 S.W.3d at 363 (citing *Paintsville Hosp.*, 683 S.W.2d at 257). Whether this reliance was justifiable is a question of fact. The party asserting apparent agency, however, "must still identify facts showing that he reasonably relied upon the ostensible agency relationship to his detriment." *Middleton v. Hacker*, No. 2006-CA-002364-MR, 2007 WL 3122270, at *2 (Ky. Ct. App. Oct. 26, 2007) (citing *Roethke*, 68 S.W.3d at 363-64). Plaintiff states that he relied on the advertisements and marketing of Lees Leisure in believing that Lite Tent and Dawkins were its agents and in consequently choosing to do business with them. (Doc. # 12 at 17). No evidence has been presented to demonstrate that Plaintiff had any knowledge that would contradict the existence of an agency relationship, nor that he had any basis to believe that one did not exist.

Plaintiff's arguments additionally place great reliance on the certificate of origin that he received upon purchase of the trailer. (*See* Docs. # 1, 12, 24). In his Complaint, Plaintiff states that he "purchased a Lees-ure Lite new motorcycle pull trailer from Lite Tent and Jimmie Dawkins by Bill of Sale dated 9/25/09, . . . and Plaintiff *then* received a certificate of origin . . . ." (Doc. # 1 at 3-4) (emphasis added). Defendant notes that "Plaintiff did not even see [the certificate] until after he decided to purchase the trailer from Lite Tent." (Doc. # 32 at 4). Because Plaintiff states that he did not receive the certificate until after agreeing to the purchase of the trailer, he cannot also assert that he relied on the

11

information therein when choosing to make such purchase.[5]   The certificate may have served, however, to reaffirm Plaintiff's previous belief that an agency relationship existed between Defendant Lees Leisure and Defendants Lite Tent and Jimmie Dawkins, though it was not *relied* on for the purposes of this determination.

Without consideration of the Certificate of Origin, Plaintiff has alleged that he relied on the representations of Defendant Lees Leisure made through varying forms of advertisement.  Viewing these facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to establish a prima facie showing of justifiable reliance and, thus, for a finding of apparent authority.  Accordingly, the conduct of Lite Tent and Jimmie Dawkins shall be imputed to their apparent principal, Defendant Lees Leisure, for the purpose of establishing personal jurisdiction.

### b.  Effect of Settlement with Purported Agents

In its Response to Plaintiff's Motion to Alter or Amend, Defendant asserts that "to the extent that Plaintiff is alleging that Lees Leisure is vicariously liable for the actions of Lite Tent or Jimmie Dawkins, his claims would fail even if he produced some evidence of an agency relationship."  (Doc. # 32 at 4).  Defendant bases this assertion on Kentucky law establishing that the "release of an agent from liability also releases the principal."  *Waddle v. Galen of Kentucky*, 131 S.W.3d 361, 365 (Ky. Ct. App. 2004) (citing *Copeland v. Humana of Kentucky, Inc.*, 769 S.W.2d 67 (Ky. Ct. App. 1989)).  In *Waddle*, however, the court continued, stating that this vicarious release from liability is effected only "insofar as

---

[5]  Plaintiff correctly notes that the Court erroneously attributed the source of Plaintiff's name and address as it appears on the Certificate of Origin, assigning it to Plaintiff's own writing rather than that of Jimmie Dawkins.  (Docs. # 23 at 7; 24 at 5).

the principal's liability is derived solely from the agent's negligence." *Id.*

In his Complaint, Plaintiff alleges product-liability claims upon which Defendant Lees Leisure may be held directly liable (Doc. # 1 at 5-9), therefore Defendant Lees Leisure's potential liability arising from Plaintiff's claims is not solely dependent on any alleged negligence of its purported agents. Accordingly, the effect of a settlement agreement between Plaintiff and these apparent agents does not nullify the potential liability of Defendant Lees Leisure. Additionally, Plaintiff notes in his Reply that the ultimate liability of Defendant Lees Leisure as to each claim need not be analyzed at this stage as the matter before the Court is the issue of jurisdiction. (Doc. # 33 at 2).

### 3.  Personal Jurisdiction

In determining whether a defendant is subject to personal jurisdiction, the Court must employ a two-step process. The first step is to determine whether personal jurisdiction over the defendant would be in accordance with the requirements of Kentucky's long-arm statute.[6] If jurisdiction may be properly extended under the long-arm statute, the Court proceeds to the second step. At step two of analysis, the Court examines whether the exercise of personal jurisdiction would offend the due process rights granted under the Constitution.

---

[6]  Until recently, courts have interpreted the Kentucky long-arm statute to be entirely subsumed by the federal due process analysis for the exercise of personal jurisdiction over nonresidents. This notion that personal jurisdiction in Kentucky reaches to the outer limits defined by federal due process was overturned in *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011). The court in *Caesars* restored the independent significance of the long-arm statute, clarifying that "the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process." *Caesars*, 336 S.W.3d at 57; *see Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011). The court further held that "[t]o the extent *Wilson*, *Cummings*, and like cases hold otherwise, they are overruled." *Caesars*, 336 S.W.3d at 57.

### a.     Kentucky Long-Arm Statute

There are nine instances enumerated in Kentucky's long-arm statute which allow Kentucky courts to extend personal jurisdiction over a nonresident.   Defendant Lees Leisure argues that the Kentucky long-arm statute does not permit this Court to exercise personal jurisdiction over it "because the alleged negligence and injury that gave rise to this claim all occurred outside the Commonwealth."  (Docs. # 11-1 at 4; 32 at 5 (stating that "there is simply no provision of the Kentucky long-arm statue to establish personal jurisdiction over Lees Leisure as Plaintiff's claim does not arise out of any contact that Lees Leisure had in Kentucky or any activity in the state")).   The fact that the product was manufactured and allegedly gave rise to an injury outside the Commonwealth, however, does not preclude jurisdiction under all provisions of the Kentucky long-arm statute.

Plaintiff implicates section (2)(a)(2) of the long-arm statute, asserting that his "claim arises out of the Defendant, Lees Leisure, manufacturing and transferring its property . . . to the plaintiff for use in Kentucky."  (Doc. # 24 at 4).  This section states that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [c]ontracting to supply services or goods in this Commonwealth."  K.R.S. § 454.210(2)(a)(2).  Because Defendant Lees Leisure was not a direct party to this transaction, the Court must rely on the doctrine of apparent authority for the basis that Defendant Lees Leisure transferred its property to Plaintiff during the September 2009 sale.

The Kentucky Supreme Court recently interpreted this provision of the long-arm statute in a case that is factually similar to the one at hand.  In *Hinners v. Robey*, the court held that "[a] plain reading of the statutory language produces the interpretation that the

14

contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." 336 S.W.3d 891, 896 (Ky. 2011). That is the situation here. The parties in *Hinners* entered into a contract to purchase a vehicle pursuant to an internet auction. The defendant in that case, a resident of Missouri, had posted the vehicle for sale, and the plaintiff, a Kentucky resident, had placed the winning bid. The court acknowledged that the deal was finalized "beyond Kentucky's border," but added that "it was anticipated by the parties from the outset that the vehicle would be transported to and used in Kentucky." *Id.* The court instructs that these facts "[c]learly" demonstrate that the defendant's conduct fell within the purview of this particular provision of the statute.[7]

The facts here are similar. Pursuant to the advertisements of Defendant Lees Leisure and its apparent agent, Lite Tent, Plaintiff contacted Dawkins to inquire about their products. The parties determined that Lite Tent had a Lees Leisure product of the price and description that Plaintiff was interested in purchasing. Dawkins agreed to hold the unit for Plaintiff and to meet him at the Gold Wing bike rally in North Carolina, where, if Plaintiff liked the trailer, he would purchase it. It was at this rally, a mutually convenient location, that they ultimately finalized the sale. Plaintiff's allegations demonstrate that Lite Tent knew, and the parties intended, that the product would be transported back to Plaintiff's resident state of Kentucky as its primary place of storage and use. These allegations are supported by the communications between Plaintiff and Dawkins, and by the listing of

---

[7] The court found that this single contact was sufficient to authorize personal jurisdiction under the Kentucky long-arm statute, though it ultimately found that the exercise of jurisdiction over the nonresident would offend the standards of federal due process as it did not satisfy the first and third prongs of the due process analysis. *Hinners*, 336 S.W.3d at 899-903.

Plaintiff's address on the Bill of Sale and Certificate of Origin documents. Therefore, it is evident from "[a] plain reading of the statutory language" that K.R.S. § 454.210(2)(a)(2) is applicable because Defendant Lees Leisure, through its apparent agent, "contract[ed] to supply . . . goods in this Commonwealth." *Hinners*, 336 S.W.3d at 896. The exercise of personal jurisdiction over Lees Leisure is therefore authorized by this statute if Plaintiff's claim is found to have arisen from this conduct.

Upon a finding that one of the provisions of the long-arm statute is applicable, a court must additionally determine whether the cause of action is one "arising from" the conduct identified in that particular provision. K.R.S. § 454.210(2)(a). In *Caesars Riverboat Casino*, the court rejected the use of a "but for" test, and further instructed that the "arising from" requirement is satisfied "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 58-59 (Ky. 2011); *see also Hinners*, 336 S.W.3d at 896-97.

Here, Plaintiff's complaint alleges product liability claims, maintaining that these claims arise from the manufacture and sale of the product in question. Plaintiff distinguishes the instant facts from those in *Caesars*, which held that "a slip-and-fall accident in an Indiana casino could not reasonably be construed as 'arising from' the casino's 'transacting business' in Kentucky by way of advertising and promotional campaigns." *Hinners* 336 S.W.3d at 896 (citing *Caesars*, 336 S.W.3d at 58). Plaintiff argues that unlike the tenuous connection in *Caesars*, the subject goods of the contract for sale encompassed in section (2)(a)(2) embody the "defective and negligent condition" that gave rise to Plaintiff's injury and the basis for his claim. (Doc. # 12 at 9).

16

Given the "unlimited factual possibilities," the Court "will ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction." *Caesars*, 336 S.W.3d at 59.  A claim to recover for injuries resulting from the use of an allegedly defective and unreasonably dangerous product as sold to Plaintiff bears a reasonable and direct nexus to the "[c]ontract[] to supply" those very "goods."  K.R.S. § 454.210(2)(a)(2).

For the reasons stated herein, the exercise of personal jurisdiction over Lees Leisure is permissible in this case under K.R.S. § 454.210(2)(a)(2).  Whether this Court may ultimately exercise personal jurisdiction over Defendant Lees Leisure consequently depends upon the result of the federal due process analysis.

### b.     Federal Due Process

"The Fourteenth Amendment's Due Process Clause sets the outer boundaries of a state tribunal's authority to proceed against a defendant."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2848 (2011).  Due Process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  In resolving the question of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."  *Id.* at 474 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).  There are two forms of personal jurisdiction.  General jurisdiction "depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may

17

have against the defendant." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)). Specific jurisdiction, on the other hand, "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (quoting *Helicopteros*, 466 U.S. at 414 n.8).

Plaintiff only argues for the application of specific personal jurisdiction. (Doc. # 12 at 21). In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit implemented a three prong test to determine the "outerlimits" of personal jurisdiction based upon a defendant's single contact with the forum state. *Mohasco*, 401 F.2d 374, 381 (6th Cir. 1968). These criteria are stated as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* The Court will address each of these criteria in turn.

### i.   The Defendant Must Have "Purposefully Avail[ed]" Himself of the Privilege of Acting or Causing a Consequence in the Forum State

The first prong of the *Mohasco* test, "the sine qua non for in personam jurisdiction," asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence therein. *Mohasco*, 401 F.2d at 381-82. "The 'purposeful availment' requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.'" *Citizens Bank v. Parnes*, 376 F. App'x

496, 502 (6th Cir. 2010) (unpublished opinion) (quoting *Burger King*, 471 U.S. at 475). Plaintiff asserts that Defendant Lees Leisure purposefully availed itself of the laws of Kentucky by "advertising directly to Kentucky residents by posting a Kentucky resident's positive testimonial on its website and by contracting to sell goods to be used in Kentucky with known Kentucky residents." (Doc. # 12 at 21). Defendant Lees Leisure maintains that their conduct does not meet the requirements of purposeful availment, whether analyzing their actions alone or in conjunction with those of their purported agent, Lite Tent. Defendant supports this argument by stating that "they did not conduct business with Plaintiff in the Commonwealth," and that Plaintiff concedes that "the injury occurred outside of the United States." (Doc. # 11-1 at 11, 16).

The Supreme Court has held that "'[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its product into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum consumers." *Burger King*, 471 U.S. at 473 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011) (Kennedy, J., plurality) (indicating that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment"). That is the situation here. Defendant Lees Leisure manufactured an allegedly defective product and placed it into the stream of commerce, supported by various forms of marketing targeted, in part, at residents of Kentucky. The product was eventually sold to Plaintiff, a Kentucky consumer, by a distributor acting under apparent authority to sell the product on Defendant's behalf. This product then allegedly resulted in injury to Plaintiff.

19

The marketing of Defendant and its apparent agent, as well as the ultimate sale, reflect more than a mere expectation that the product may be purchased by a resident of the forum.  These directed efforts reflect a purposeful intent to reach such a consumer.

Defendant's reliance on the fact that they have no physical presence in Kentucky is unavailing.  The Supreme Court has stated that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)).  A defendant may "be subject to jurisdiction without entering the forum . . . as where manufacturers or distributors 'seek to serve' a given State's market."  *J. McIntyre*, 131 S. Ct. at 2788 (Kennedy, J., plurality) (stating that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum") (quoting *World-Wide Volkswagen*, 444 U.S. at 295).  The actions of Defendant and its apparent agents demonstrate such efforts to reach certain groups of consumers, including residents of Kentucky as one of the specifically targeted markets they "seek to serve."  *World-Wide Volkswagen*, 444 U.S. at 295.

The Supreme Court has recently expounded upon the purposeful availment inquiry in the context of a product-liability suit in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).  The Court, in a plurality opinion, seeks to "reconcile the competing opinions" in *Asahi Metal Industry Co. v. Superior Court of California*, adhering to the notion that "'[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.'"  *J. McIntyre*, 131 S. Ct. at 2788-89 (Kennedy, J., plurality) (quoting *Asahi*, 480 U.S. 102, 112 (1987) (O'Connor, J.)).

20

Defendant compares the present facts to those in *J. McIntyre*, in which the Supreme Court found that a British manufacturer was not subject to personal jurisdiction in New Jersey where one of its machines caused injury.  In reaching their finding that the foreign manufacturer had not purposefully availed itself of the laws of the forum, the Court highlighted the facts that "at no time had [the defendant manufacturer] advertised in, sent goods to, or in any relevant sense targeted the [forum] State."  *J. McIntyre*, 131 S. Ct. at 2785.  In contrast, the facts here demonstrate that Defendant Lees Leisure has advertised in, sent goods to, and targeted the Commonwealth of Kentucky in efforts to market and sell its products.

The Sixth Circuit has also reaffirmed its "'preference for Justice O'Connor's stream of commerce 'plus' approach'" from *Asahi*.  *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 220 (6th Cir. 2006) (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 480 (6th Cir. 2003)).  It is undisputed that Defendant Lees Leisure manufactured the allegedly defective product in question and placed it in the stream of commerce.  Plaintiff further argues that Defendant used testimonials from Kentucky residents in its advertising, and sold the trailer at issue to Plaintiff through its apparent agent, who entered into the sale with the knowledge and intent to sell to a Kentucky consumer.  Plaintiff relies on these additional actions to establish the requisite "plus" consistent with Sixth Circuit precedent.

Defendant states that its "only contacts with Kentucky are through its website and the national magazines in which it advertises," (Doc. # 11-1 at 2, 13), and argues that "'merely advertising in trade publications is not a sufficient basis for establishing personal jurisdiction.'" (Doc. # 18 at 10) (quoting *Majestec 125, LLC v. Sealift, Inc.*, No. 1:06-cv-104,

2006 WL 2039984, at *5 (W.D. Mich. July 19, 2006)).  Plaintiff, however, does not rely solely on Defendant Lees Leisure's national advertisements in Wing World magazine, nor on the existence of a commercial web-site, to establish the necessary minimum contacts with Kentucky and to show Defendant's intent to target Kentucky consumers.  The web-site and brochure of Defendant Lees Leisure both contain a testimonial of a Kentucky resident, each expressing satisfaction with their Lees Leisure product.  (Docs. # 12-3 at 3; 12-5 at 7).  Furthermore, advertisements of Defendant Lees Leisure establish an apparent agency relationship with its distributor, Lite Tent, whose own website holds itself out as the "Distributor for the Southeast" and the "Southeast exclusive stocking factory authorized distributor for the full line of compact camping trailers and accessories manufactured by [Lees Leisure] Trailers."  (Doc. # 12-6 at 1).  It was upon review of these materials that Plaintiff pursued the purchase of one of the advertised Lees Leisure pull tent trailers.  These marketing efforts do more than create a mere prediction that Lees Leisure products may be purchased by consumers who are residents of Kentucky.  They demonstrate a clear effort on the part of Defendant Lees Leisure, directly and through its apparent agent, to attract Kentucky residents to purchase their Kentuckian-approved products.

Additionally, the allegedly defective trailer was sold by Defendant Lees Leisure's apparent agent with the intention of selling to a Kentucky resident for Kentucky use. Plaintiff contacted Lite Tent in response to the above advertisements and Lees Leisure's invitation to call a nearby distributor.  After discussing Plaintiff's needs and Lite Tent's inventory, Plaintiff and Dawkins agreed to meet at a mutually convenient location to complete the transaction.  At all relevant times, Lite Tent was aware that Plaintiff was a Kentucky resident, and that upon purchase of the tent trailer, it would return home with him

to be stored and primarily used in Kentucky.  This additional contact with Kentucky, based on the success of deliberate marketing efforts by Defendant Lees Leisure, both directly and through its apparent agent, cannot be considered "'random, fortuitous, or attenuated.'" *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 795 (6th Cir. 1996) (quoting *Burger King*, 471 U.S. at 475).

Defendant also compares the present facts to those in *Hinners* in an attempt to show that "a defendant does not purposefully avail himself of the laws of Kentucky by selling a single vehicle to a Kentucky resident outside the Commonwealth."  (Doc. # 11-1 at 11-12). In *Hinners*, the court found that the defendant was not subject to personal jurisdiction in Kentucky under the federal due process analysis because the fact "[t]hat the buyer's home state was Kentucky is a purely fortuitous consequence, not a purposeful choice of [the seller]."  *Hinners*, 336 S.W.3d at 900.  The court highlighted in their analysis that the seller "did not limit the auction to bidders from Kentucky or target his advertisement to Kentucky residents, and in fact could not know the resident state of the successful bidder until the auction was complete."  *Id.* at 899.  The facts here are easily distinguished.  The sale of the product in question was ultimately a result of Defendant's advertisements, expressly directed at Kentucky residents, among other targeted consumers, and made in furtherance of an ongoing business.  Furthermore, the transaction was entered into with the knowledge and understanding that the product was to be taken back to and stored where Plaintiff resided, in Kentucky.  As a result of the marketing efforts and the discussions that took place prior to Plaintiff and Lite Tent consummating the sale, that the product was purchased by a Kentucky resident to be primarily used and stored in Kentucky was not merely a "fortuitous consequence."  *Id.*

Although Plaintiff concedes that he first contacted Lite Tent, this fact is inconsequential. *See Mohasco*, 401 F.2d at 382 (finding that the plaintiff's solicitation to enter into an agreement was immaterial as defendant made the choice to deal with plaintiff, and the court "cannot diminish the purposefulness of [defendant]'s choice") (citing *Shealy v. Challenger Mfg. Co.*, 304 F.2d 102 (4th Cir. 1962)). The initial phone call by Plaintiff was made in response to Lees Leisure and Lite Tent advertisements directly targeting consumers, specifically including Kentucky residents. (Doc. # 12 at 4-5). Defendant's apparent agent, Lite Tent, was aware that Plaintiff was a resident of Kentucky and intended to return home with the trailer. That the transaction was completed in North Carolina was merely out of convenience to the parties. Plaintiff asserts that Lite Tent was also aware prior to making the sale that the allegedly defective trailer would be primarily stored in and used on the roads in Kentucky. Plaintiff has alleged sufficient facts to demonstrate that Defendant Lees Leisure's sale of a good into Kentucky through its apparent agent was not a product of mere chance, but rather a direct result of Kentucky-targeted advertisements, and the purposeful choice of the seller to make arrangements for the product to be purchased by a known Kentucky resident.

The fact that the alleged physical injury to Plaintiff occurred outside of Kentucky does not preclude a finding of purposeful availment. The defendant "may reasonably foresee being haled into the forum to defend himself . . . when the plaintiff's injury, although a 'consequence' occurring outside the forum, is also a consequence of the defendant's business transactions in the forum." *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991). The injury to Plaintiff resulted from the allegedly unsafe condition of the product when manufactured and marketed by Defendant Lees Leisure and subsequently sold to

Plaintiff by Defendant's apparent agent, Lite Tent. It is immaterial to this determination that the ultimate injury occurred beyond Kentucky borders.

Plaintiff has demonstrated sufficient minimum contacts "'purposefully directed' . . . at residents of the forum" such that Defendant Lees Leisure has subjected itself to personal jurisdiction in the courts of Kentucky for any claims arising out of, or relating to, those contacts. *Burger King*, 471 U.S. at 472; *see J. McIntyre*, 131 S. Ct. at 2789 ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction."). Defendant Lees Leisure placed their products into the stream of commerce with, not only an expectation to reach, but a concerted marketing effort targeted to reach and attract consumers within this Commonwealth. Through its own advertisements and sales and those of its apparent agent, Lite Tent, Lees Leisure was successful in selling to a Kentucky resident the allegedly defective product at issue in this case. Therefore, Plaintiff has presented sufficient facts to make a prima facie showing that Defendant Lees Leisure purposefully availed itself of the laws of Kentucky.

### ii. The Cause of Action must "Arise From" the Nonresident Defendant's Activities in the Forum State

The Court proceeds in the second prong to determine whether the cause of action "arise[s] from" the activities of the nonresident in the forum state. This factor "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Mohasco*, 401 F.2d at 384 n.27). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Mohasco*, 401

25

F.2d at 384 n.29.

Plaintiff's cause of action arises out of injuries received from an allegedly defective product marketed and sold to him as a resident of Kentucky.  Lees Leisure targeted Kentucky residents in its marketing, and, through its apparent agent, chose to sell its product to a known Kentucky resident for use and storage in his home state.  This conduct and activity of Defendant Lees Leisure, directed at the Commonwealth, has a substantial connection to Plaintiff's claims rooted in the allegedly defective and unreasonably dangerous nature of this very product.

Defendant relies on the holding in *World-Wide Volkswagen*, arguing that "it is a violation of the Due Process Clause to subject manufacturers to personal jurisdiction all over the Unite [sic] States simply because their product travels through a state."  (Doc. # 18 at 12-13) (citing *World-Wide Volkswagen*, 444 U.S. 286 (1980)).  Defendant's analogy to *World-Wide*, however, is inapplicable as Kentucky is not merely a state which the product has passed through as a result of the "unilateral activity" of the Plaintiff.  *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Kentucky was known by both buyer and seller to be the intended primary location for the product upon its sale to Plaintiff.  Thus, following Defendant's own line of reasoning, Kentucky is a more appropriate choice of jurisdiction than Canada, a location in which the product merely happened to travel through.  Plaintiff's product liability cause of action here directly arises out of Lees Leisure's activities directed at the forum through the ultimate sale and the targeted advertisements which induced Plaintiff, a Kentucky resident, to purchase its product for use in his state of residence.

26

### iii. There Must be Substantial Enough Connection with the Forum State Such That the Exercise of Jurisdiction Over Defendant Is Reasonable

The third and final prong in the federal due process analysis requires that the exercise of personal jurisdiction over a defendant be reasonable.  The Sixth Circuit has held that where the first two prongs of the *Mohasco* test have been met, "an inference arises that this third factor is also present."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996); *see Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 372 (6th Cir. 2006) (noting that a finding that the first two prongs of *Mohasco* have been met leads to a presumption that jurisdiction is proper, except in "unusual cases").  "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

In determining whether jurisdiction is reasonable, the Court considers several factors including "'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'"  *CompuServe*, 89 F.3d at 1268 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169-70 (6th Cir. 1988)).  Plaintiff's interest in obtaining relief is manifest.  Likewise, Kentucky's interest in this case is straightforward.  A Kentucky resident purchased an allegedly defective product that was at all times intended to be brought back into and used in Kentucky.  This gives rise to an interest on a number of factors, such as the safety of its residents from the use of defective products, highway safety concerns, and potential expenses resulting from injury to persons or property from the use of an allegedly

27

defective trailer on Kentucky roads.

In circumstances such as here, where the defendant is a foreign party, "the Supreme Court has directed us to undertake the reasonableness inquiry giving special weight to the 'unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)).  However, Lees Leisure has not provided the Court with any reason why defending this case in Kentucky would be unduly burdensome.  Defendant merely states that it is unreasonable to subject it to personal jurisdiction in Kentucky "because all Defendant['s] relevant activities occurred in other states and other countries."  (Doc. # 18 at 14).  As stated more extensively herein, even conduct and activities of Defendant that took place outside of the Commonwealth were specifically directed, at least in part, at the Commonwealth and its resident consumers.

Defendant again compares these facts to those in *Hinners*, where the court found that "in the case of a single contract formed over the Internet and touching upon this Commonwealth, and when the sale is completed and thereafter each party goes his own way," the requirements of due process have not been met.  *Hinners*, 336 S.W.3d at 902. As previously stated, *Hinners* involved a private seller transferring a vehicle to a resident of Kentucky through a single listing in an internet auction with no targeted advertising, "and in fact [the defendant seller] could not know the resident state of the successful bidder until the auction was complete."  *Id.* at 899.  Here, however, the sale was the result of Defendant's marketing, targeted in part at Kentucky residents, and was made by "purposeful choice" of Defendant's apparent agent with the knowledge and intent to sell the product to a Kentucky resident for use in his home state.  *Id.* at 900.  These facts are

further distinguished in that Defendant's advertisements and the resulting sale of its product was a function of Defendant's ongoing commercial business.

Defendant further argues that jurisdiction is unreasonable because neither it, nor its apparent agent, enjoys a "regular supply of customers from Kentucky" in the course of this business.  (Doc. # 18 at 15).  However, it is clear from Plaintiff's allegations that Defendant and its agent can and do expect business from Kentucky residents, and further, that they welcome and accommodate that business, even though sales to Kentucky residents may not comprise a large portion of their annual revenue.[8]  Where defendants "'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities."  *Burger King*, 471 U.S. at 473-74 (internal citations omitted) (quoting *Kulko v. Superior Court of California*, 436 U.S. 84, 96 (1978)).  Whether the directed advertisements were successful to the degree intended does not change the fact that Defendant, both directly and through its apparent agent, reached out to Kentucky to attract the business of its residents.  It was such conduct and activity that resulted in the sale of the allegedly defective product to Plaintiff, which is at the center of this suit.  Thus, it is reasonable to compel Defendant Lees Leisure to come to the Commonwealth of Kentucky to defend itself

---

[8]  According to the affidavit of Dawkins, only two trailers were delivered to Kentucky locations on behalf of Lite Tent, both in May 2009.  (Doc. # 11-3 at 2).  The affidavit of Richard Lees, a Director of Defendant Lees Leisure, states that only one tent trailer has been sold and shipped to a Kentucky resident through its website.  (Doc. # 11-2 at 3).  In his response, Plaintiff has identified a Kentucky recipient of a tent trailer purchased from Lite Tent and delivered in May 2009 who also received a Lees Leisure accessory delivered to his Ludlow, Kentucky home by Lite Tent in May 2010.  Plaintiff has also identified a Kentucky resident who purchased a Lees Leisure camper from Dawkins on behalf of Lite Tent in July 2007, which was delivered to his Frankfort, Kentucky home.  (Doc. # 12 at 5-6).  From Plaintiff's limited access to transactions in Lees Leisure and Lite Tent's sales histories, he has already identified sales into Kentucky beyond those suggested by Defendant and its apparent agent.

against these claims.

Viewing the facts in a light most favorable to Plaintiff, Lees Leisure's conduct and activities directed at the forum state are sufficient to establish a prima facie showing that personal jurisdiction is proper under the Kentucky long-arm statute and consistent with the requirements of federal due process.   Accordingly, the Court **vacates** its prior Order granting Defendant Leisure's motion to dismiss for lack of personal jurisdiction.

**B.   Defendant's Motion to Dismiss for Insufficient Service of Process is Denied**

Upon finding that the Court may exercise personal jurisdiction over Defendant Lees Leisure, the Court must address Defendant's Motion to Dismiss for Insufficient Service of Process pursuant to Federal Rule of Civil Procedure 12(b)(5) (Doc. # 11).  Defendant Lees Leisure, a business entity organized under the laws of Canada, asserts that service was not made in accordance with the Hague Convention and is therefore ineffective, meriting dismissal. (Doc. # 11-1 at 16).[9]  Before a court may exercise personal jurisdiction over a party, proper service of process must be effectuated.  *See Sawyer v. Lexington-Fayette Urban Cnty. Gov't*, 18 F. App'x 285, 287 (6th Cir. 2001) (citing *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976)).  Plaintiff "bears the burden of perfecting service of process and showing that proper service was made."  *Id.* (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

―――――――――――――

[9] Defendant requests that, as a result of improper service, "this Court quash the summons and dismiss Plaintiff's claims against it."  (Doc. # 11-1 at 17).  The case on which Defendant relies on this issue, *Collins*, cites the Sixth Circuit's instruction that "'if the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later.'"  *Collins v. Westfreight Sys., Inc.*, No. 7:08-227-KKC, 2009 WL 1036381, at *3 (E.D. Ky. Apr. 17, 2009) (quoting *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1953)).

Pursuant to the Federal Rules of Civil Procedure, proper service of a foreign corporation, partnership, or other unincorporated association can be made "by any internationally agreed means of service that is reasonably calculated to give notice." Fed. R. Civ. P. 4(f)(1) and 4(h)(2). This shall include "those [means] authorized by the Hague Convention[.]" *Id.* This Court has previously held that the Hague Convention applies to service of a Canadian corporate defendant, as Canada and the United States are both parties to the Convention. *See Collins v. Westfreight Sys., Inc.*, No. 7:08-227-KKC, 2009 WL 1036381 (E.D. Ky. Apr. 17, 2009); *see also* Hague Conference on Private Int'l Law, http://www.hcch.net (listing the contracting states to the Convention, as well as the effective date for its provisions and any relevant declarations made by each individual state).

While the parties agree that the Hague Convention applies, Defendant contends that Plaintiff's use of certified mail was not a proper means of service under the Convention. Article 10(a) of the Hague Convention states, "[p]rovided the State of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad . . . ." Convention done at The Hague art. 10(a), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163, C.T.S. 1989/2. There is disagreement among the circuits, as well as among the district courts within this circuit, whether this article allows service of process through postal channels. The Second and Ninth Circuits have held that "the word 'send' in Article 10(a) was intended to mean 'service'," thus permitting the use of postal channels as a means of proper service of process under the Hague Convention. *Ackermann v. Levine*, 788 F.2d 830, 838-39 (2d Cir. 1986) (holding that "[t]he service of process by registered mail did not violate the Hague Convention"); *see Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir. 2004) (joining the

31

Second Circuit's holding in *Ackermann*, finding that "send" in Article 10(a) includes "serve").

Both circuits viewed this interpretation of "send" as "consistent with the purpose of the

Convention to facilitate international service of judicial documents." *Brockmeyer*, 383 F.3d

at 802.

The Fifth and Eighth Circuits, however, have reached a different conclusion.  Relying

on "the canons of statutory interpretation," these circuits have determined that "the Hague

Convention does not permit service by mail." *Nuovo Pignone SpA v. STORMAN ASIA M/V*,

310 F.3d 374, 384 (5th Cir. 2002)*; Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 174 (8th

Cir. 1989) (concluding that "sending a copy of a summons and complaint by registered mail

to a defendant in a foreign country is not a method of service of process permitted by the

Hague Convention").   Rather, these circuits adhere strictly to the notion that "where a

legislative body 'includes particular language in one section of a statute but omits it in

another section of the same Act, it is generally presumed that [the legislative body] acts

intentionally and purposely in the disparate inclusion or exclusion.'"  *Bankston*, 889 F.2d

at 174 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  This analysis, however,

ignores the overwhelming evidence demonstrating a contrary intent of the drafters.

In its motion, Defendant relies on the decision in *Collins v. Westfreight Systems* for

the proposition that certified mail is not a proper means of service upon a Canadian

corporation.  *Collins*, 2009 WL 1036381, at *2.  As a matter of first impression in the

Eastern District of Kentucky, the court in *Collins* followed a decision in the Western District

of Kentucky concluding that "such service was not permitted under Article 10(a) because

the Hague Convention distinguishes between the terms 'send' and 'service,' and since

Article 10(a) uses the term 'send,' service of process cannot be completed by mail."

32

*Collins*, 2009 WL 1036381, at * 2 (citing *Uppendahl v. Am. Honda Motor Co.*, 291 F. Supp. 2d 531, 534 (W.D. Ky. 2003)).[10]  Defendant also notes a divergent outcome from this district in *Orms v. Takeda Pharmaceuticals America, Inc.*, but concludes that the result is based solely on the fact that the defendant was a resident of Japan and "[w]hether a defendant can be served via certified mail is a country-specific inquiry." (Doc. # 11-1 at 17 n.1); *see Orms v. Takeda Pharm. Am., Inc.*, No. 10-160-JMH, 2010 WL 2757760 (E.D. Ky. July 12, 2010).  To the extent that the Court in *Orms* was interpreting the plain meaning of Article 10(a), however, it was not making a country-specific determination.

Though this issue is still unsettled, and in the absence of controlling Sixth Circuit authority, the Court will follow the sound decision reached in a number of the circuits, as well as within this district, that the term "send" as used in Article 10(a) of the Hague Convention was intended to include service of process.  *See Ackermann*, 788 F.2d at 838 (2d Cir. 1986); *Brockmeyer*, 383 F.3d at 802-03 (9th Cir. 2004); *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 926 (7th Cir. 2002) (noting that "simple certified mail . . . [is] a method [of service] permitted by Article 10(a) of the Hague Convention, so long as the foreign country does not object").  The use of postal channels is a proper means of service under Article 10(a) of the Hague Convention, provided that the State of destination does not object.

This position is in line with *Orms*, the most recent precedent in this Court.  In *Orms*, the Court adhered to "the well-reasoned opinion in *Sibley v. Alcan*, 400 F. Supp. 2d 1051

---

[10]  In choosing to follow the *Uppendahl* decision, the Court noted that the plaintiff presented no argument on the issue of interpretation of Article 10(a), maintaining only that the Hague Convention did not apply.  *Collins*, at * 2.

(N.D. Ohio 2005). The court in [*Sibley*] concluded that '[i]f Article 10(a) were intended only to preserve the right to use postal channels for non-service correspondence, it would be out of place in Article 10, chapter [1], and indeed in the Hague Convention itself[,]' because the purpose of the Hague Convention was to create agreements related to service of process."[11] *Orms*, 2010 WL 2757760, at *2 (quoting *Sibley*, 400 F. Supp. 2d at 1054). Statements from delegates representing Member States of the Convention, as well as "[c]ommentaries on the history of negotiations leading to the Hague Convention further indicate that service by mail is permitted under Article 10(a)." *Brockmeyer*, 383 F.3d at 802.

Signatories to the Hague Convention have repeatedly voiced their agreement with the holdings that interpret Article 10(a) to permit service of process via postal channels. The *Practical Handbook*, summarizing the findings of a "Special Commission of Experts," notes divergent interpretations, and comments that decisions holding that Article 10(a) does not apply to service of process "'contradict what seems to have been the implicit understanding of the delegates . . . and indeed of the legal literature on the Convention and its predecessor treaties.'" *Brockmeyer*, 383 F.3d at 803 (quoting Permanent Bureau of The Hague, *Practical Handbook on the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* 44 (2d ed. 1992)). Furthermore, at the 2003 meeting of the Special Commission

---

[11] Although the court in *Sibley* mistakenly refers to the content of Article 10 as residing in chapter 2 of the Hague Convention, it is actually found in chapter 1, titled "Judicial Documents." The source of this statement as quoted in *Sibley* correctly makes this identification. *See R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1105 (D. Nev. 1996). The mere typographical error in *Sibley* in reproducing this quote does not affect the court's otherwise sound analysis.

on the Practical Operation of the Hague, the Commission "reaffirmed its clear understanding that the term 'send' in Article 10(a) is to be understood as meaning 'service' through postal channels."   Permanent Bureau of The Hague, *Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions*, ¶ 55 (Oct. 28 - Nov. 4, 2003).  The opening language of Article 1 of the Hague Convention explicitly states that "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document *for service* abroad."  Convention done at The Hague art. 1 (emphasis added).  In an effort to give full effect to the drafters' intent, the definition of "send" must be interpreted to include the service of process.

Under this widely supported interpretation of Article 10(a), Plaintiff's use of certified mail to serve Canadian Defendant Lees Leisure is proper as Canada has not stated its objection to the use of postal channels for service of process as provided for under this article.[12]   Therefore, Defendant's motion to dismiss for insufficient service of process is

---

[12]   *See Sibley v. Alcan, Inc.*, 400 F. Supp. 2d 1051, 1054-55 (N.D. Ohio 2005) (holding that "service of process by registered mail . . . to a Canadian defendant is permitted by Article 10(a) of the Hague Convention"); *TracFone Wireless, Inc. v. Does*, No. 11-cv-21871-MGC, 2011 WL 4711458, at *4 (S.D. Fla. Oct. 4, 2011) (finding that "Canada does not object to Article 10(a) and, accordingly, permits service by international express mail"); *Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537 (D. Del. 2010) ("Under Article 10 of the Hague Convention, Canada does not object to service by postal channels."); *McCormick v. Apache, Inc.*, No. 5:09CV49, 2009 WL 2985470, at *2 (N.D.W.Va. Sept. 15, 2009) (stating that "Canada, the destination country in this case, does not object to service under Article 10"); *Anderson v. Canarail, Inc.*, No. 05 Civ. 3828(HB), 2005 WL 2454072, at *4 (S.D.N.Y Oct. 6, 2005) (finding that pursuant to the Hague Convention, "service of process by registered mail upon [the defendant] in Canada was a proper means of service"); *see also*  Hague Conference on Private Int'l Law, http://www.hcch.net, Convention of 15 November 1965, Status Table, Canada, Declarations (listing the test of Canada's declarations, including those to "[t]ransmission through postal channels," and stating that "Canada does not object to service by postal channels" as permitted in Article 10(a)).

**denied.**[13]

### III. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** as follows:

1) Plaintiff's Motion to Alter or Amend (Doc. # 24) be, and is is hereby **GRANTED**;

2) The Court's prior Order (Doc. # 23) is hereby **VACATED**;

3) Defendant Lees Leisure's Motion to Dismiss for Lack of Personal Jurisdiction and for Insufficient Service of Process (Doc. # 11) is hereby **DENIED**; and

4) Defendant Lees Leisure shall file its Answer within twenty (20) days of the date of the entry of this Order.

This 28th day of February, 2012.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\Opinions\Covington\2011\11-125 MOO Vacating Order & Denying D's MTD.wpd

---

[13] The Court previously denied Defendant's Motion to Strike Exhibit 16 to Plaintiff's Response (Doc. # 17) as moot. (Doc. # 23). This exhibit was presented by Plaintiff in support of his argument that service upon Defendant was proper and in accordance with the provisions of the Hague Convention, specifically Article 10(a). It contains an e-mail and pages printed from the Hague Convention website regarding Canada's declarations. (Doc. # 12-16). The content of Plaintiff's Exhibit 16, however, was unnecessary to the Court's determination that service of process is appropriate under Article 10(a) of the Hague Convention. Moreover, the fact that Canada does not object to such means of service is well documented in case law. *See* cases cited *supra* note 12. The documents comprising Plaintiff's Exhibit 16 were therefore not considered by the Court, and thus any continuing objection to this exhibit by Defendant remains moot.